UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JACQUELINE M. L.**, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 21-CV-400-CDL |
| **KILOLO KIJAKAZI,** Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.      Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

1

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the Court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.   Procedural History

The plaintiff filed an application for social security disability benefits and supplemental social security income on June 24, 2019. (R. 59). The plaintiff alleged disability due to bipolar disorder and an "alternate [sense] of reality." (R. 60). She was thirty-eight years old on the alleged onset date of June 1, 2019. The plaintiff has a ninth-grade education and has past work as a housekeeper and an inventory counter. (R. 62, 84).

The Commissioner denied the plaintiff's application on initial review and on reconsideration. The plaintiff then requested a hearing before an Administrative Law Judge

(ALJ). The ALJ held a telephone hearing on November 30, 2020. Testimony was given by the plaintiff and a Vocational Expert (VE). On December 14, 2020, the ALJ issued a decision denying disability benefits. (R. 22). On July 27, 2021, the Appeals Council denied the plaintiff's request for review, which rendered the ALJ's decision the agency's final decision. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's December 14, 2020 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.

The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the

claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that the plaintiff has not engaged in substantial gainful activity since June 24, 2019. (R. 24). At step two, the ALJ determined that the plaintiff has the following severe impairments: bipolar disorder, generalized anxiety disorder, degenerative disc disease, congenital fusion at C-2 and C-3, cervical radiculopathy, and right carpal tunnel syndrome. (R. 25). At step three, the ALJ found that the plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing. *Id*. The ALJ specifically noted the plaintiff's physical impairments in connection with Listing 1.04 (pertaining to disorders of the spine) and Listing 11.02 (pertaining to epilepsy). *Id.*

With regard to mental impairments, the ALJ found that the plaintiff's impairments do not meet or medically equal the criteria of Listings 12.04 (Depressive, bipolar, and related disorders), and 12.06 (Anxiety and obsessive-compulsive disorders). *Id*. The ALJ discussed application of the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a listing. (R. 19-22; *see* 20 C.F.R. § 404 Subpt. P App'x 1). To satisfy the paragraph B criteria, a claimant's mental impairments must result in at least one extreme or two marked limitations in four areas of functioning. 20 C.F.R. § 404 Subpt. P App'x 1. A marked limitation means that the claimant's functioning in the area independently, appropriately, effectively, and on a sustained basis is seriously limited. *Id*. An extreme limitation means the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id*.

4

Here, the ALJ found that the plaintiff has a moderate limitation in each of the four paragraph B domains: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 25-26). Because the plaintiff does not have at least one extreme or two or more marked limitations, her mental impairments do not meet or medically equal the criteria of the Listings. (R. 26). Finally, the ALJ also addressed the "paragraph C" criteria for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c), and determined that they are not satisfied. *Id*. In accordance with these findings, the ALJ proceeded to step four.

At step four, the ALJ determined that the plaintiff has the RFC

> to lift and/or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8–hour workday (Light work is defined in 20 CFR 416.967(b)) except no climbing ladders, ropes, or scaffolds, or exposure to unprotected heights; occasional stooping, kneeling, crouching, and crawling, and climbing ramps or stairs; frequent grasping, handling and fine motor manipulation with the right upper extremity; and no limitation on the left. She is limited to a reasoning level of 2 as defined by Appendix C of the DOT, which is apply commonsense understanding to carry out detailed but uninvolved written or oral instructions; and deal with problems involving a few concrete variables in or from standardized situations. She is limited to occasional contact with coworkers and supervisors, no contact with the general public, working with things rather than people, no strict productions[sic] standards such as fast-paced assembly line work or poultry processing.

*Id.* In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and

SSR 16-3p." (R. 27). The ALJ also considered "medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c and 416.920c." *Id.*

The ALJ did not consider the transferability of job skills because the plaintiff does not have past relevant work to consider pursuant to 20 CFR 416.968. (R. 30). Accordingly, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical person with the plaintiff's age, education, work experience, and RFC, the ALJ found that the plaintiff can perform the requirements of representative occupations, including:

> *Small product assembler*, SVP level 2, DOT # 706.684-022, with 95,000 jobs existing in the national economy;
>
> *Hand packer*, light exertion, unskilled, SVP level 2, DOT # 559.687-074, with 110,000 jobs existing in the national economy; and
>
> *Bakery racker*, light exertion, unskilled, SVP 1, DOT # 524.687-018, with 59,419 jobs existing in the national economy.

(R. 31). Accordingly, the ALJ concluded at step five that Plaintiff is not disabled. *Id.*

## IV. Discussion

The plaintiff argues two errors: (1) the ALJ's physical RFC determination is unsupported by the substantial evidence as he minimized or ignored the plaintiff's impairments, and (2) the ALJ erred at Step Five of the sequential evaluation process by adopting a job that is precluded by the determined physical RFC. The Commissioner contends that the ALJ's RFC determination "accounted for all of the plaintiff's limitations and was supported by substantial evidence," and that any error at step five was harmless. (Commissioner's Br., Doc. 17 at 3).

A.     **RFC Determination**

The plaintiff argues that the ALJ selectively ignored relevant evidence in the record concerning the plaintiff's physical impairments. The plaintiff's brief cites her complaints of neck and back pain, difficulty gripping and holding things with her right hand, numbness and tingling in her right hand, alleged seizures and tremors in her arms, headaches, hallucinations, and mood swings.

In response, the Commissioner contends that the ALJ cited substantial evidence in support of her RFC determination. The Commissioner's brief points to various physical and mental examination findings of normal strength, motor function, and mental status. The Commissioner also argues that the ALJ reasonably relied on the plaintiff's self-reported activities, including that she is able to do yardwork, clean the house, care for herself, and engage in hobbies such as puzzles and coloring.

The Court notes that the plaintiff's brief addresses this argument largely in general, broad terms, rather than tying her argument to specific evidence in the record. Additionally, the plaintiff's brief confusingly combines its discussion of the plaintiff's physical complaints with her mental limitations, often without clearly explaining how the plaintiff is more limited than the physical and mental RFC determination. As such, the Court will not attempt to guess as to the plaintiff's grounds for objection or to "scour [the] evidentiary record for every conceivable error." *Womack v. Astrue*, No. CIV-07-167-W, 2008 WL 2486524 (W.D. Okla. June 19, 2008) (citing *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003) (in turn, citing *U.S. v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991)). However, the Court may not "abdicate its traditional judicial function, nor escape its duty to scrutinize

7

the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." *Id*. (citing *Bridges v. Gardner,* 368 F.2d 86, 90 (5th Cir. 1966) and other cases).

The plaintiff does specifically challenge the RFC finding as to manipulative limitations arising from her right carpal tunnel syndrome and cervical radiculopathy. In assessing a claimant's complaints of pain and other symptoms, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[1]

---

[1] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value.").

In evaluating pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

The plaintiff complained of weakness, tingling, and numbness in her right hand. Medical evidence in the record shows that in November 2019, the plaintiff was seen for neck and bilateral arm pain and numbness in her right hand. On physical examination, she had positive results on a Spurling's test, Phalen's test, and Tinel's test in the right wrist. (R. 28; *see* R. 322-323). Sensory deficit in the right index finger was also noted. (R. 323). The plaintiff underwent imaging in January 2020 that revealed "a mild right carpal tunnel syndrome (median nerve entrapment at wrist) affecting sensory components." (R. 373). On January 17, 2020, the plaintiff again had positive Phalen's and Tinel's signs, this time bilaterally, as well as positive straight leg raising. (R. 29).

A neurologist, Jay Kevin Johnson, D.O., examined the plaintiff in January 2020. Dr. Johnson noted that the plaintiff alleged a tremor in her arms and observed that "she certainly has what looks like exaggerated physiologic tremor." (R. 352). The plaintiff reported experiencing weakness and numbness in her right hand for the last two to three years. Dr. Johnson noted the EMG image showing "median neuropathy at the wrist, carpal tunnel syndrome, mild, on the right," which he believed "might explain some of her symptoms." (R. 352-354). He did not see "any other nerve issues." (R. 352).

---

> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c), 416.929(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum v. Barnhart,* 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

The ALJ's decision acknowledged that the plaintiff has multilevel degenerative disc disease, cervical radiculopathy, and right carpal tunnel syndrome. (*See, e.g.*, R. 29). At the hearing, the plaintiff testified that she cannot feel her right index finger, loses her grip with her right hand, and cannot lift a gallon of milk without using both hands. (R. 27). In the RFC determination, the ALJ assessed a limitation to frequent use of the right hand for grasping, handling, and fine motor manipulation. However, he found that no additional manipulative restrictions were warranted, explaining that (1) plaintiff's EMG test "revealed only mild right carpal tunnel syndrome," (2) the plaintiff shortly thereafter traveled to Ohio to visit family, (3) the plaintiff had a positive drug screen on January 14, 2020 "and admitted to the occasional use of Norco and marijuana for pain," and (4) the plaintiff's treating physicians "did not place any functional restrictions on her activities that would preclude light work activity with the [RFC] restrictions." (R. 30).

The ALJ's decision discussed some of the medical evidence relevant to the plaintiff's carpal tunnel and back and neck pain, as noted above. However, the record includes additional evidence relevant to her alleged manipulative limitations—for example, medical evidence relating to the treatment and prognoses for these conditions. For example, the plaintiff told Dr. Johnson that she had tried wearing wrist splints for six months but that it hadn't helped. (R. 352). Dr. Johnson advised that "if indeed she's used [a] wrist splint without benefit[,] consideration for a carpal tunnel release could be given." (R. 354). Another physician related the plaintiff's report of numbness and tingling in both hands and that she was "following up with orthopedics for possible surgery." (R. 362; *see also* R. 367, 371).

The ALJ also appears to have discounted the plaintiff's complaints of numbness and weakness in the right hand. However, the ALJ's decision failed to acknowledge evidence in the record that supports the plaintiff's complaints of sensory deficits in the right hand. (*See* R. 373 (imaging showed mild right carpal tunnel syndrome *affecting sensory components* (emphasis added); R. 352 (noting the plaintiff's complaints of weakness and numbness, and citing evidence of median neuropathy at the wrist); R. 370 (noting "positive for numbness and headaches")).[2]

Consistency determinations "are peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Although an ALJ is not required to discuss every piece of evidence, he must consider the entire record and "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

---

[2] Although the ALJ did not discuss these portions of the record, during the hearing the ALJ questioned whether the record includes anything "like an EMG of the upper extremities to support the neuropathy . . . of the right arm she's talked about?" (R. 51). Apparently overlooking the plaintiff's January 2020 imaging records, her attorney stated that he "didn't see one of those." *Id.*

Because the ALJ did not address all of the relevant medical evidence relevant to the plaintiff's manipulative limitations, such as to possible treatments and measures taken to alleviate her symptoms, it is not clear whether the ALJ considered the record as a whole. As such, the ALJ's decision also did not adequately explain why he discounted the plaintiff's complaints regarding manipulative limitations and pain from her physical impairments. Remand is therefore necessary for further consideration of the record as to the plaintiff's manipulative limitations.[3] Should the ALJ on remand determine that no additional manipulative restrictions are needed, the ALJ's decision should provide explanation sufficient to enable meaningful review of his reasoning in light of the record as a whole.

Additionally, on remand, the ALJ should provide a more balanced discussion of the evidence relating to her mental impairments. For instance, the ALJ summarized the third-party function reports by the plaintiff's husband as follows:

> [The plaintiff's] husband stated the [plaintiff] cleaned house constantly, colors in color books, did puzzles, and had no problem with personal care. He stated the [plaintiff] baked, cleaned house, did laundry, mowed, did dishes, went outside a couple times a day, walked, rode in a car, rarely went shopping, and did not pay bills. The [plaintiff's] husband stated the [plaintiff] did puzzles, colored, cleaned house, and did not spend time with others. In a Third Party Function Report dated October 24, 2019, the [plaintiff's] husband stated the claimant

---

[3] The Court notes that the record includes no medical opinion or administrative findings as to the plaintiff's physical RFC. As such, on remand, the ALJ should also consider whether additional record development is warranted as to the plaintiff's physical impairments. *See Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993) (the ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised.").

>took care of her pet lizard, and had no problem with personal care. He stated the [plaintiff] cooked some, did housework, did yard work, went outside often, walked, did not shop, and did not pay bills. The [plaintiff's] husband stated the [plaintiff] did puzzles, sewed, knitted, read, and did not spend time with others. In a Function Report dated October 31, 2019, the [plaintiff's] husband stated the [plaintiff] woke up and colored, did puzzles, knitted, and had no problem with personal care. He stated the [plaintiff] vacuumed, washed dishes, mopped, dusted, and did not cook. The [plaintiff's] husband stated the [plaintiff] never went outside, walked, did not drive, did not shop, and did not pay bills. He stated the [plaintiff]colored, did puzzles, knitted, and did not spend time with others.

(R. 29) (exhibit citations omitted).

However, a review of the husband's reports paints a more nuanced picture. In fact, the plaintiff's husband described her day-to-day behavior as "manic" at times, relating that she will sometimes do housework "compulsively . . . all day," change clothes all day, bathe multiple times a day, and use a hairbrush with enough force to "rip" her hair. (R. 232-234). At other times, he reported that she is abusive and argumentative and has a "vast challenge" interacting with others. (R. 232). He described her as "disoriented and in fairyland . . . manic all the time about everything," and said that she seems to have "an alternate[] sense of reality." (R. 203, 239). He reported that the plaintiff has "constant seizures" and "throw[s] up a lot." (R. 198-199). However, the ALJ's decision reflects a selective discussion of these reports. As such, it does not enable the Court to determine whether the correct legal standards were applied. *See* Social Security Ruling 16-3p ("The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.").

### B.     Step Five

The plaintiff argues that the ALJ failed to resolve a conflict between the VE's testimony and the DOT provisions for the position of Bakery Racker. The Commissioner concedes that the Bakery Racker job is inconsistent with the RFC determination but contends that the ALJ's error was harmless because the remaining two positions represent enough jobs to meet the Commissioner's burden at step five. However, having found the case should be remanded for further proceedings at step four, the Court need not resolve at this time whether the ALJ's step-five error is harmless. The ALJ should review the prior step-five determinations, if necessary, on remand.

## V.     Conclusion

For the reasons set forth above, the Court finds the ALJ's decision did not adequately explain the ALJ's RFC determination in light of the record as a whole. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

DATED this 30th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge